**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raymond L. WASHINGTON,**
**Defendant–Appellant.**

No. 94–5228.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 28, 1994.

Decided Dec. 1, 1994.

---

**ARGUED:** John Henry Maclin, IV, Petersburg, VA, for appellant. N. George Metcalf, Asst. U.S. Atty., Richmond, VA, for appellee. **ON BRIEF:** Helen F. Fahey, U.S. Atty., Elliott Bender, Law Student Intern, Richmond, VA, for appellee.

Before RUSSELL and MOTZ, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge MOTZ and Judge CHASANOW joined.

## OPINION

RUSSELL, Circuit Judge:

The defendant, Raymond L. Washington, was convicted of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He appeals the district court's refusal to reduce his charge to simple possession of cocaine under 21 U.S.C. § 844(a). We affirm.

1. The following is an excerpt of Washington's cross-examination at trial:

    Q. This amount that you were caught with, the 12.1 grams, had you bought that for someone else?
    A. I bought it for all of us.
    Q. All of us. And you were going to give it to some of them; is that correct, the other people?
    A. We were going to get high with it.
    Q. You all were going to get high, so you were going to give it to them, you were going to distribute it to them. You physically gave the drugs to somebody else?

### I.

In March 1992, during a search incident to a lawful arrest for illegally operating a motor vehicle, Washington was found in possession of 12.1 grams of cocaine base, or "crack" cocaine. The arresting officers also found a pager and a $20 bill on Washington and a 9mm pistol in the car between the driver's seat and the transmission hump. The officers did not find any drug paraphernalia that would indicate that Washington planned to sell cocaine: the car contained no packaging materials, such as vials, plastic baggies, sandwich bags, or corners of plastic bags, and no weighing apparatus, such as a scale.

At trial, Washington testified that he was a serious drug user. He said that he had used cocaine for four years and had been hospitalized three times for drug abuse. He testified that he used about 4.5 grams of cocaine per day and that the cocaine found on his person was for his own use. Washington's girlfriend testified that Washington used drugs "a lot" and "very often." She confirmed that he had been hospitalized for drug abuse.

On cross-examination, however, Washington admitted that, although he did not have a job, he paid $450 for the cocaine. He explained that he received the money to purchase the cocaine from his friends, who gave him the money because he could purchase cocaine at a good price. He testified that he planned to return to his friends with the cocaine, which they would use together. When asked whether he intended to share the cocaine with somebody else, Washington responded in the affirmative.[1]

A grand jury indicted Washington for one count of possession with the intent to distrib-

    A. I weren't physically giving it to them. We just wanted, you know, to sit around and get high.
    Q. Were they your drugs or somebody else's?
    A. Yes, they were mine, because I purchased them.
    Q. You intended to share them with somebody else?
    A. Right.
    *   *   *   *   *   *
    Q. Now, sir, on this particular day you were planning to take those drugs and share them with your friends, is that a fair statement?
    A. Yes, sir.
    Joint Appendix 59–61.

ute in excess of five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), and one count of intentional use of a firearm in relationship to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and § 2. The jury returned a verdict of guilty to the possession offense and not guilty to the firearm offense. The district court sentenced Washington to 210 months imprisonment.

Washington was represented at trial and on this appeal by court-appointed counsel. Washington's counsel filed a notice of appeal on Washington's behalf but, after reviewing the entire record, determined that there was no merit to Washington's appeal. Pursuant to the guidelines set forth in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel nonetheless submitted a brief and appeared at oral argument on Washington's behalf. In accordance with the requirements of *Anders*, furthermore, we have examined the entire record in this case and have found no other meritorious issues for appeal.

On October 5, 1994, one week after the Court heard arguments in this case, the Clerk of the Court notified Washington that he had the right under *Anders* to file a *pro se* supplemental brief. The Clerk allowed Washington 30 days to file a supplemental brief. Washington did not submit such a brief, and the 30–day period has expired.

## II.

■ The record clearly demonstrates that Washington was not involved in any way in the trafficking of drugs. He did not sell drugs, and he was not a courier of drugs. He simply bought cocaine, which he planned to use himself and to share with his friends. However, Washington's intent to share the cocaine with others is sufficient for a court to find that he possessed drugs with intent to distribute.

■ Distribution under 21 U.S.C. § 841(a)(1) is not limited to the sale of controlled substances. *United States v. Baswell*, 792 F.2d 755, 760 n. 7 (8th Cir.1986). "Facilitation of the sale of narcotics" was prohibited before Congress enacted § 841. 21 U.S.C. § 174 (repealed 1970). Section 841,

part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "1970 Act"), 21 U.S.C. § 801 *et seq.*, proscribes "distribution" of controlled substances, as opposed to "facilitation of sale." *See United States v. Hernandez*, 480 F.2d 1044, 1046 (9th Cir.1973). The term "distribute" means "to deliver ... a controlled substance...." 21 U.S.C. § 802(11). "Deliver" means "the actual, constructive, or attempted transfer of a controlled substance ... whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Thus, in enacting the 1970 Act, Congress intended to proscribe a range of conduct broader than the mere sale of narcotics.

■ Sharing drugs with another constitutes "distribution" under § 841(a)(1). *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir.1979) ("In the instant case, there is direct evidence that appellant engaged in the 'distribution' of cocaine; although apparently no commercial scheme is involved, his sharing the cocaine ... constitutes 'distribution' for purposes of 21 U.S.C. § 841(a)(1)."); *United States v. Meyers*, 601 F.Supp. 1072, 1074 (D.Or.1984) ("The concept of 'distribution' includes sharing drugs with a third party, and is not limited to commercial ventures."). Washington testified at trial that he intended to share the cocaine in his possession with his friends. This admission was enough to demonstrate that he possessed the cocaine "with intent to distribute."

The Ninth Circuit considered almost the exact same factual situation in *United States v. Wright*, 593 F.2d 105 (9th Cir.1979). In *Wright*, a friend gave the defendant $20 and asked him to purchase heroin so that the two of them could use it together; the defendant left the friend's dwelling, bought the heroin, and returned to the friend's dwelling, where they snorted the heroin together. *Id.* at 108. The district court in *Wright* had refused to give the defendant's proposed jury instruction that would have directed the jury, if it found that the defendant acquired the heroin in a joint venture with the friend and used the heroin only with the friend, to conclude that there was no distribution of heroin. Instead, the district court instructed the jury simply that "distribute" meant "to transfer

or deliver a substance either directly or by means of another person." *Id.* at 106. The defendant based his jury instruction on *United States v. Swiderski*, 548 F.2d 445 (2d Cir.1977),[2] in which the Second Circuit held that:

> where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their crime is ... simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution.

*Id.* at 450. Although the defendant in *Wright* purchased the heroin alone, he argued that the purchase was part of a joint venture with the friend; thus, there was no distribution of heroin to the friend because the friend was in constructive possession of the heroin at the time he made the purchase. *Wright,* 593 F.2d at 108. The Ninth Circuit, concluding that "Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others," rejected the defendant's joint venture theory and upheld the district court's jury instruction. *Id. See also United States v. Speer,* 30 F.3d 605, 608–09 (5th Cir.1994) (following *Wright* ).

We agree with the court in *Wright* that a defendant who purchases a drug and shares it with a friend has "distributed" the drug even though the purchase was part of a joint venture to use drugs. Washington and his friends were clearly engaged in a joint venture: the friends gave Washington money to purchase cocaine, and Washington went out and purchased cocaine that all would use. The joint venture, however, does not alter the fact that Washington, from the time he purchased the cocaine until the time he was found with it, intended to distribute the cocaine to his friends. Although Washington did not intend to sell the cocaine to his friends,[3] he intended to deliver cocaine to those friends. Under § 841(a)(1), Washington's intent to deliver cocaine to his friends constituted an "intent to distribute."

Washington's trial testimony that he intended to share the cocaine with his friends was, in itself, sufficient evidence for the jury to find him guilty of possession with intent to distribute. The government did not need to demonstrate an intent to distribute based upon the quantity of cocaine found on Washington and from the other circumstances of the case.

The judgment of the district court is affirmed.

*AFFIRMED.*

---

**2.** No other circuit has followed the Second Circuit in *Swiderski. See United States v. Speer,* 30 F.3d 605, 609 (5th Cir.1994) ("This Circuit has never adopted the *Swiderski* doctrine nor have we found that any other circuit has done so."). We do not reach the question of whether *Swiderski* is good law in this Circuit.

**3.** Although it is not crucial to our decision today, we note that Washington did, in a way, profit from the transaction. On his own, he could not have afforded to purchase cocaine in the quantities that he used it. Washington, however, knew where to purchase cocaine at a good price. In exchange for providing his services, his friends allowed him to use a portion of the cocaine purchased. Although Washington was advanced the money to purchase the cocaine and received his profits in direct drug use, he profited as much as any drug dealer who purchases drugs with his own money and profits monetarily from their sale.